IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs September 14, 2010

**KEVIN JONES v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Shelby County**
**No. P-28447     W. Otis Higgs, Jr., Judge**

**No. W2009-02051-CCA-R3-PC  - Filed November 19, 2010**

The petitioner, Kevin Jones, appeals the denial of his petition for post-conviction relief from his conviction for aggravated child abuse, arguing that his trial counsel provided ineffective assistance by his failure to obtain a defense expert medical witness and that Tennessee Supreme Court Rule 13, which restricts funding for expert witnesses in non-capital post-conviction proceedings, violates the Equal Protection Clause of the United States Constitution. Following our review, we affirm the denial of the petition.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the Court, in which J.C. MCLIN and D. KELLY THOMAS, JR., JJ., joined.

James E. Thomas, Memphis, Tennessee, for the appellant, Kevin Jones.

Robert E. Cooper, Jr., Attorney General and Reporter; J. Ross Dyer, Senior Counsel; William L. Gibbons, District Attorney General; and Summer Morgan, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**FACTS**

The petitioner was convicted by a Shelby County jury of aggravated child abuse, a Class A felony, and sentenced by the trial court as a Range I offender to twenty years in the Department of Correction. We affirmed his conviction and sentence on direct appeal, and our supreme court denied his application for permission to appeal. State v. Kevin Jones, No. W2001-01381-CCA-R3-CD, 2003 WL 57312 (Tenn. Crim. App. Jan. 2, 2003), perm. to appeal denied (Tenn. May 19, 2003).

The petitioner's conviction stemmed from his abuse of his girlfriend's sixteen-month-old son, who sustained second and third degree burns over ten percent of his body from his immersion in hot water while under the petitioner's care on September 1, 1999. Id. at *1-3. When the victim's mother came home, the petitioner claimed that the victim's injuries, which also included a black eye and a "busted lip," were caused by the victim's four-year-old brother, who had placed the victim in a bathtub that was filling with hot water:

> [The victim's mother] acknowledged that the [petitioner] told her the following:  On the day the victim was burned, the [petitioner] was going to take a bath.  As he was running water into the tub, the doorbell rang, and he went to answer it.  While the [petitioner] was at the door, [the victim's brother] and the victim went from their bedroom into the bathroom, and [the victim's brother] put the victim into the bathtub.  The [petitioner] heard the victim crying, went into the bathroom, and saw the victim sitting in the tub. [The victim's brother] was standing in the tub, and the victim was struggling to get out of it.  According to the [petitioner], the victim may have gotten his black eye and busted lip from trying to get out of the tub. [The victim's mother] testified that she did not believe the [petitioner's] explanation for the victim's injuries.

Id. at *2.

According to the victim's mother, the victim, although younger, weighed more than his older brother, and she had never seen the victim's brother pick up the victim.  Id. at *1. On cross-examination, she acknowledged that the commode was beside the bathtub, that a child could get into the tub by climbing onto the commode, and that, "although she had never seen her boys get into the tub that way, they had climbed into the tub before."  Id. at *2.

Three of the victim's treating physicians testified on the State's behalf at trial:  Dr. Stephanie Storgion, a pediatrician at Le Bonheur Children's Medical Center, who testified that the pattern of the victim's burns indicated that "he suffered an immersion injury, as opposed to a splash injury," id. at *2; Dr. Jose Iglesias, a pediatric surgery fellow at Le Bonheur, who also testified that "the pattern of the victim's burns" indicated that he "had been immersed in hot water," id. at *3; and Dr. Dan Shell, a plastic surgeon, who described the surgery he had performed to remove scar tissue from the victim's right leg.  Id. at *4. On cross-examination, Dr. Iglesias acknowledged that the victim's injuries were worse on his right side and that they included burns on his right arm and small burns on both hands. Id. at *3.  He agreed that a right-handed child would tend to climb into a tub by putting the right side of his body in the tub first, and he also acknowledged that it was possible that the victim had slipped and fallen into the bathtub.  Id.

Omar McKinney, the petitioner's neighbor, testified on the petitioner's behalf that he and the petitioner, who mentioned that he was running water for a bath, were talking at the door to the petitioner's apartment on the afternoon of September 1, 1999, when the victim and his brother yelled from inside the apartment and the petitioner reacted by running back into the apartment. Id. at *4.

On May 18, 2004, the petitioner filed a *pro se* petition for post-conviction relief in which he raised a claim of ineffective assistance of counsel. Following the appointment of post-conviction counsel, he filed an amended petition in which he alleged that his trial counsel was ineffective for failing "to seek the services of an expert," which "led to the prosecution having unchallenged expert testimony at trial."

At the June 4, 2009, evidentiary hearing, the petitioner's trial counsel, who had been practicing criminal law since 1971 and was retained to represent the petitioner after the case had been transferred to criminal court, testified that his defense theory was that it was a case of accidental injury. He said he reviewed the victim's medical records but did not engage the services of a medical expert because the petitioner lacked the funds to pay for one and because he saw no basis on which "to offer an expert opinion that would contradict the medical information that [he] had." He stated that he did not petition the court for funding to hire an expert because the petitioner was employed and had retained his services, and he had no reason to believe the court would approve such a request.

On cross-examination, trial counsel agreed that he was able to elicit favorable cross-examination testimony that supported his theory of accidental injury and reiterated that he saw no reason for engaging his own medical expert. He also expressed his concern that a defense medical expert might have concurred with the State's experts that the injuries were non-accidental, which would have only strengthened the State's case:

> The only problem back then, as it is now, there's such a thing as reciprocal discovery. And if we call an expert and the expert concurs with the state's experts, then we have to turn that information over. Now, rather than the state having two experts, now the state has three. So, that's always a concern. And I had no basis to think that an expert . . . could conclude just from that late date after 18 or 24 months after the injury that he would conclude that this could absolutely only be an accident.

On redirect examination, trial counsel testified that he believed the rules of reciprocal discovery required him to disclose the findings of any defense expert to the State even if he had no intention of using the expert at trial.

The petitioner testified that at the time of counsel's representation he was earning $12.00 per hour, had money in the bank, and could have paid for the services of a medical expert. Counsel, however, never mentioned anything to him about needing one. He further testified that, at the current time, he no longer had funds to pay for the services of a medical expert.

On September 2, 2009, the post-conviction court entered an order denying the petition for post-conviction relief, finding, among other things, that counsel's conduct, when evaluated from counsel's perspective at the time of trial, fell within the wide range of reasonable professional assistance. Thereafter, the petitioner filed a timely notice of appeal to this court.

## ANALYSIS

### I. Ineffective Assistance of Counsel

The post-conviction petitioner bears the burden of proving his allegations by clear and convincing evidence. See Tenn. Code Ann. § 40-30-110(f) (2006). When an evidentiary hearing is held in the post-conviction setting, the findings of fact made by the court are conclusive on appeal unless the evidence preponderates against them. See Tidwell v. State, 922 S.W.2d 497, 500 (Tenn. 1996). Where appellate review involves purely factual issues, the appellate court should not reweigh or reevaluate the evidence. See Henley v. State, 960 S.W.2d 572, 578 (Tenn. 1997). However, review of a trial court's application of the law to the facts of the case is *de novo*, with no presumption of correctness. See Ruff v. State, 978 S.W.2d 95, 96 (Tenn. 1998). The issue of ineffective assistance of counsel, which presents mixed questions of fact and law, is reviewed *de novo*, with a presumption of correctness given only to the post-conviction court's findings of fact. See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001); State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999).

To establish a claim of ineffective assistance of counsel, the petitioner has the burden to show both that trial counsel's performance was deficient and that counsel's deficient performance prejudiced the outcome of the proceeding. Strickland v. Washington, 466 U.S. 668, 687 (1984); see State v. Taylor, 968 S.W.2d 900, 905 (Tenn. Crim. App. 1997) (noting that same standard for determining ineffective assistance of counsel that is applied in federal cases also applies in Tennessee). The Strickland standard is a two-prong test:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance

prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

466 U.S. at 687.

The deficient performance prong of the test is satisfied by showing that "counsel's acts or omissions were so serious as to fall below an objective standard of reasonableness under prevailing professional norms." Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996) (citing Strickland, 466 U.S. at 688; Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975)). The reviewing court must indulge a strong presumption that the conduct of counsel falls within the range of reasonable professional assistance, see Strickland, 466 U.S. at 690, and may not second-guess the tactical and strategic choices made by trial counsel unless those choices were uninformed because of inadequate preparation. See Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982). The prejudice prong of the test is satisfied by showing a reasonable probability, _i.e._, a "probability sufficient to undermine confidence in the outcome," that "but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694.

In arguing that trial counsel provided ineffective assistance by his failure to retain the services of a medical expert, the petitioner concentrates on two portions of counsel's testimony: that he did not believe that the trial court would approve funding for an expert; and that he thought he would be required to provide the State with a defense medical expert's potentially damaging findings even if he chose not to use the expert at trial. The petitioner asserts that counsel could have requested that the petitioner be declared indigent and then petitioned the court for funds for expert services under Rule 13 of the Rules of the Tennessee Supreme Court. He also points out that, contrary to counsel's belief, Rule 16 of the Tennessee Rules of Criminal Procedure does not require defense counsel to disclose the findings of a medical expert if counsel has no intent to introduce the findings as evidence or call the expert as a witness at trial. See Tenn. R. Crim. P. 16(b)(1)(B) (requiring reciprocal discovery of results or reports of physical or mental examinations and of scientific tests or experiments only when defendant intends to introduce the item in its case-in-chief or call as a witness the person who prepared the report, and the results or reports relate to the witness's testimony). The petitioner, therefore, contends that "trial counsel was ineffective due to his lack of knowledge or understanding of Tennessee Supreme Court Rule 13 and Rule 16 of the Tennessee Rules of Criminal Procedure."

The petitioner, however, ignores trial counsel's main rationale for not retaining a medical expert; namely, that he had no basis to believe that a medical professional, reviewing the records some months after the injury, would be able to conclusively state that the victim's injuries were accidental as opposed to non-accidental. As the State points out, the petitioner

presented no evidence at the evidentiary hearing to show that counsel was mistaken in his belief. Moreover, trial counsel successfully elicited cross-examination testimony, including from one of the State's own experts, in support of his theory that the injuries were accidental. We, therefore, conclude that the petitioner has not shown that counsel was deficient in his performance for deciding not to retain the services of a medical expert, or that the petitioner was prejudiced as a result of counsel's decision.

## II. Constitutionality of Rule 13

The petitioner next contends that Tennessee Supreme Court Rule 13, which provides for funding for expert services in capital, as opposed to non-capital, post-conviction proceedings, is unconstitutional because it violates the Equal Protection Clause of the United States Constitution. The petitioner asserts that the fact that funding for expert services is unavailable for non-capital post-conviction petitioners unfairly prevented him from meeting the prejudice prong of his ineffective assistance of counsel claim. However, as the State points out, both this court and our supreme court have held that "[n]either due process nor equal protection requires the state 'to provide expert services to indigent non-capital post-conviction petitioners.'" Johnny Rutherford v. State, No. E1999-00932-CCA-R3-PC, 2000 WL 246411, at *18 (Tenn. Crim. App. Mar. 6, 2000), perm. to appeal denied (Tenn. Sept. 18, 2000) (quoting Davis v. State, 912 S.W.2d 689, 696-97 (Tenn. 1995)). The petitioner is not, therefore, entitled to relief on the basis of this claim.

## CONCLUSION

Based on the foregoing authorities and reasoning, we affirm the denial of post-conviction relief.

_____
ALAN E. GLENN, JUDGE